# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BLAINE L.,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　Defendant. | Case No. CV 22-09008-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Blaine L. appeals the ALJ's decision denying his claim for Supplemental Security Income benefits.[1] For the reasons set forth below, the ALJ's denial of benefits is affirmed, and this case is dismissed with prejudice.

## I.  BACKGROUND

Plaintiff applied for benefits on December 16, 2019, alleging disability beginning on April 1, 2016. See Dkt. 12, Administrative Record ("AR") 179-89.[2] His claims were denied at the initial level on October 23, 2020, and upon

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Citations to the AR are to the record pagination. All other docket

reconsideration on February 17, 2021. See AR 48-57, 59-75, 98-104. He received a hearing before an ALJ on November 10, 2021. See AR 29-47. The ALJ issued an unfavorable decision on November 24, 2021. See AR 12-28.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. See AR 17. At step two, the ALJ found that Plaintiff had the following severe impairments: "venous stasis dermatitis; congestive heart failure (CHF); hypertension; and obesity." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). See id.

After considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work "except with occasional postural activities." AR 18.[3] The ALJ made no finding at step four, opting instead to make a finding at step five. See AR 22. At step five, based on the testimony of a vocational expert, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including officer helper, order clerk, and hand packager. See AR 22-23. As a result, the ALJ concluded that Plaintiff has not been under a disability

---

citations are to the CM/ECF pagination.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

since his application date. See AR 23.

The Appeals Council denied review of this decision. See AR 1-6. Plaintiff then sought judicial review from this Court. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based on legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted). Under the substantial-evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation omitted) (cleaned up). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 1154, 1157. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.   DISCUSSION

The parties' sole dispute is whether the ALJ failed to adequately consider Listings 4.11 and 4.12 at step three of the sequential evaluation process. See Dkt. 15, Plaintiff's Opening Brief ("Pl.'s Br.") at 1; Dkt. 19, Defendant's Response Brief ("Def.'s Br.") at 2.[4]

### A.   Applicable Law

At step three of the sequential evaluation process, an ALJ considers

---

[4] Plaintiff did not file a reply brief within the required timeframe under Rule 8 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). See Dkt. 11 (minute order indicating that this action is governed by Supplemental Rules).

whether an applicant has an impairment or combination of impairments that meets or medically equals an impairment included in the regulations' listing of disabling impairments (Appendix 1). See 20 C.F.R. §§ 416.920, 416.925. Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995). Thus, if the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. 20 C.F.R. § 416.920(d); Sullivan v. Zebley, 493 U.S. 521, 525 (1990).

The claimant bears the burden of proving that he has an impairment that meets or equals a listed impairment. Burch, 400 F.3d at 683; Zebley, 493 U.S. at 530 (noting burden of proof rests with claimant to provide and identify medical signs and laboratory findings that support all criteria for step three determination). "For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020) (quoting Zebley, 493 U.S. at 530); see also 20 C.F.R. § 416.925(d) (explaining that an impairment cannot meet the criteria of a listing based solely on a diagnosis). To show that an impairment is "medically equivalent to a listed impairment," the claimant must establish that his "symptoms, signs and laboratory findings are at least equal in severity" to those of a listed impairment. Ford, 950 F.3d at 1148 (citing 20 C.F.R. § 404.1529(d)(3)). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch, 400 F.3d at 683.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." Lewis v.

Apfel, 236 F.3d 503, 512 (9th Cir. 2001). Remand may be appropriate where the ALJ fails to adequately consider a listing that plausibly applies to a claimant's case. See id. at 514; see also Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (requiring that ALJ "make sufficient findings" and "adequately explain" evaluation of evidence at step three). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). An ALJ's decision that a claimant does not meet a listing must be upheld if it is supported by "substantial evidence." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

**B.   Analysis**

At step three of the decision, the ALJ considered Plaintiff's impairments, singly and in combination, under Listing 4.02 in particular; this listing pertains to "[c]hronic heart failure while on a regimen of prescribed treatment," with certain symptoms and signs. See AR 17; see also Appendix 1 § 4.02. While the ALJ considered Listing 4.02 in particular, the ALJ also concluded that Plaintiff's impairments did not meet or medically equal any other listed impairments in Appendix 1. See AR 17. The ALJ explained that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." Id.

Plaintiff contends that based on the medical evidence in the record, his impairments would likely meet or medically equal either Listing 4.11 or 4.12. See Pl.'s Br. at 3-5. He argues that the ALJ erred by failing to specifically consider and discuss either of these two listings in the decision. See id. Defendant argues that the ALJ's analysis was legally sufficient because the ALJ properly found that Plaintiff did not satisfy any listed impairment and adequately discussed the medical evidence underlying this decision. See Def.'s

5

Br. at 4.

As an initial matter, nothing in the record suggests that Plaintiff attempted at any point in earlier proceedings to demonstrate that his impairments met or medically equaled either of these listings. During the hearing, Plaintiff's counsel summarized Plaintiff's impairments as "a history of congestive heart failure, venous statis dermatitis or chronic pitting edema in the lower extremities and cirrhosis." AR 33. Counsel argued that Plaintiff would be found disabled under step five of the evaluation process, citing a medical opinion that "assessed [Plaintiff] with a less than sedentary [RFC] and [indicated that he] will miss about four days of work per month." Id. When Plaintiff requested review by the Appeals Council, Plaintiff's counsel similarly argued that (i) the ALJ erred by failing to adopt the RFC assessment from that medical opinion; and (ii) Plaintiff should have been found disabled under step five of the evaluation process. See AR 280.

Thus, at least with respect to Plaintiff's equivalency arguments under Listings 4.11 and 4.12, there was no duty on the part of the ALJ to discuss whether Plaintiff's combination of impairments equaled either listing. See Burch, 400 F.3d at 683; Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (determining that ALJ adequately addressed step three evaluation given that plaintiff "never presented evidence or advanced an argument for equivalency"). Moreover, even assuming that the ALJ failed to consider whether Plaintiff met Listing 4.11 or 4.12, the Court concludes that reversal or remand in this case is not necessary because, as discussed below, Plaintiff fails to identify evidence demonstrating that his impairments meet either listing.

    1.    **Listing 4.11**

Listing 4.11 pertains to "[c]hronis venous insufficiencies of a lower extremity"; to meet this listing, a claimant must have this condition "with incompetency or obstruction of the deep venous system" and one of the

following:

> A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip. OR
>
> B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

Appendix 1 § 4.11.

Plaintiff advances the following argument about why his impairments meet (or equal) this listing:

> Listing 4.11 covers Chronic Venous Insufficiency which has been established in this case (AR 479, 633, 638, 646-747, 651, 655, 659, 663, 670, 674). At Step 2, the hearing decision found Venous Sta[s]is Dermatitis to be a severe impairment. Listing 4.11(b) includes Sta[s]is Dermatitis that persists for 3 months despite prescribed treatment since she had the underlying diagnosis, plus Sta[s]is Dermatitis for more than 3 months despite treatment (AR 479, 633, 638, 646-747, 651, 655, 659, 663, 670, 674). There is strong support on file showing that Listing 4.11 is met or equaled.

Pl.'s Br. at 4.

As Plaintiff points out, the ALJ identified venous stasis dermatitis as one of Plaintiff's severe impairments. See AR 17. The ALJ addressed this impairment when discussing the medical evidence in the record. In particular, the ALJ explained that according to Plaintiff's treatment notes from October 2019, Plaintiff reported "doing well with regard to his heart condition" and "was advised to continue with medication management for [his] conditions and compression therapy for venous stasis dermatitis." AR 19 (citing AR 526-28). The ALJ also discussed treatment notes dated November 7, 2019, noting that Plaintiff reported improved symptoms and the ability to walk for 0.9 miles without symptoms. Id. (citing AR 518). The ALJ acknowledged that an examination later the same month "revealed chronic venous stasis changes"

but noted that "there were no deficits in pulmonary or cardiovascular functioning." Id. (citing AR 515). Plaintiff does not challenge the ALJ's evaluation of this evidence; rather, he insists that the ALJ's failure to evaluate the record evidence under Listing 4.11 was a "major oversight at Step 3 making this error far from harmless." Pl.'s Br. at 4.

Defendant argues that Plaintiff has not shown reversible error because the record evidence is insufficient to establish the criteria for either subpart of Listing 4.11. See Def.'s Br. at 4-8. The Court agrees.

As to Listing 4.11(A), Plaintiff makes no showing that his impairments meet this subpart of the listing. Accordingly, Plaintiff necessarily fails to show that the ALJ erred at to this subpart of the listing. See Ford, 950 F.3d at 1148 ("The burden of proof is on the claimant at steps one through four.").

Subpart (B) of Listing 4.11 requires "[s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." Appendix 1 § 4.11(B) (emphasis added). While Plaintiff cites several pages from the record in arguing that he meets these criteria, many of those citations are to outpatient summary reports that merely list "venous stasis ulcer of LE" as one of Plaintiff's numerous ongoing diagnoses. See, e.g., AR 633, 638. This diagnosis, by itself, is insufficient to meet the listing criteria. See 20 C.F.R. § 416.925(d).

Considering the contents of the treatment notes, there is no indication that Plaintiff was treated for recurrent or persistent ulceration, and the treatment notes do not show that his ulcerations failed to heal after three months of treatment. Plaintiff's treatment notes from September and October 2019 indicate that he experienced skin changes with thickened skin. See, e.g., AR 526, 532, 538. His treatment plan for venous stasis dermatitis of the lower limbs included compression therapy with compression socks and using lotion

on dry skin. See AR 528. In early November 2020, Plaintiff attended a "phone visit" to "follow up on [lower extremity] lesion" and other conditions. See AR 645-47. This treatment note indicated that Plaintiff's ulcer was "improving from [the] previous documented exam." AR 647. The note indicated that healing was "likely delayed in the setting of venous stasis; but lesion is dry, getting smaller and no signs of infection." Id. Plaintiff was encouraged to keep open air on the wound and moisturize the skin. See id. A treatment note from later that month indicated that Plaintiff continued to show "[c]hronic venous stasis changes" but did not mention any ulcerations. See AR 515-16.

Apart from the above evidence, the only other discussion of ulcerations appears in a July 2021 treatment note. See AR 651-52; see also 663-64 (duplicate record). This treatment note reported that Plaintiff had a "rough spot on right anterior shin that comes and goes" but that he had "[n]o symptoms"; Plaintiff's shin was treated with liquid nitrogen spray with no complications, and he was advised that the lesion would likely form a blister. See AR 651-52.

In sum, the record evidence is insufficient to show that Plaintiff could meet all of the specified criteria under Listing 4.11(B). Given this, and given the ALJ's discussion of Plaintiff's stasis dermatitis conditions, the Court cannot conclude that the ALJ's failure to discuss Listing 4.11 in particular amounted to reversible error. See Ford, 950 F.3d at 1148 (citation omitted); see also Torres v. Saul, No. 19-00049, 2019 WL 7882061, at *7 (C.D. Cal. Oct. 31, 2019) (affirming ALJ's step three finding that plaintiff's impairments did not meet or equal any listing, rejecting argument that plaintiff met listing § 1.04(A) because listing required evidence of nerve root compression which was "not present here").

### 2. Listing 4.12

Listing 4.12 pertains to peripheral arterial disease; to meet this listing, a

claimant must have this disease, "causing intermittent claudication (see 4.00G1)" <u>and</u> one of the following:

> A. Resting ankle/brachial systolic blood pressure of less than 0.50. OR
> B. Decrease in systolic blood pressure at the ankle on exercise (see 4.00G7a and 4.00C16-4.00C17) of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level. OR
> C. Resting toe systolic pressure of less than 30 mm Hg (see 4.00G7c and 4.00G8). OR
> D. Resting toe/brachial systolic blood pressure ratio of less than 0.40 (see 4.00G7c).

Appendix 1 § 4.12.

Plaintiff provides the following explanation as to why his impairments meet (or equal) this listing:

> SSA Listing 4.12 covers peripheral vascular disease and Plaintiff suffered from Peripheral Vascular Disease (AR 493-494). During a Consultative Exam, Plaintiff presented with JVD, 2+ pitting edema of both lower extremities (AR 631-632). At time [sic] he presented with trace peripheral edema and/or leg swelling (AR 480, 659). Based on the criterion under Listing 4.12, Plaintiff is likely to meet or equal Listing 4.12 but the hearing decision does not address Listing 4.12.

Pl.'s Br. at 5.

As an initial matter, Defendant concedes that Plaintiff was diagnosed with peripheral vascular disease ("PVD") but argues that Listing 4.12 is inapplicable because Plaintiff was not diagnosed with peripheral <u>arterial</u> disease. <u>See</u> Def.'s Br. at 4. This argument is not convincing. Appendix 1 defines peripheral arterial disease as a type of PVD. <u>See</u> Appendix 1 § 4.00(G)(1) ("Generally, PVD is any impairment that affects either the arteries (peripheral arterial disease) or the veins (venous insufficiencies) in the extremities, particularly the lower extremities."). Moreover, Appendix 1

provides that the SSA "will evaluate peripheral vascular disease under [Listing] 4.11 or 4.12." Id. § 4.00(A)(1)(c); see also Mikesell v. Berryhill, No. 15-1026, 2017 WL 3608239, at *3 (D.N.M. Feb. 23, 2017) (noting that ALJ determined that plaintiff suffered from severe impairment of "peripheral vascular (arterial) disease" and evaluated PVD under listings 4.11 and 4.12).

Here, the ALJ did not address Plaintiff's PVD diagnosis in the decision and did not evaluate this condition under Listing 4.11 or 4.12. Given the language in Appendix 1 and Plaintiff's undisputed PVD diagnosis, the ALJ should have offered some evaluation of this condition under the appropriate listing(s). However, even assuming the ALJ erred in this regard, Plaintiff must demonstrate that the error affected his substantial rights or resulted in prejudice. See Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights."). Plaintiff has not done so here.

As discussed above, the record evidence is insufficient to demonstrate that Plaintiff could meet Listing 4.11. A mere diagnosis of PVD does not suffice to show that Plaintiff meets this or any other listing. See 20 C.F.R. § 416.925(d). As to Listing 4.12, Plaintiff similarly fails to identify evidence in the record demonstrating that he meets the remaining criteria under listing 4.12—namely, that Plaintiff experienced intermittent claudication or any of the requirements listed in subparts (A)-(D) of this listing.[5] Instead, Plaintiff argues that he meets Listing 4.12 because he presented at various examinations with pitting edema, trace peripheral edema, and leg swelling. See Pl's Br. at 5 (citing AR 631-32, 480, 659). It is unclear why these records suffice to show that

---

[5] Subparts (A)-(D) reference ankle brachial index or toe brachial index blood pressure measurements. From a review of the record evidence, the Court is unable to locate any such measurements.

Plaintiff meets the criteria under Listing 4.12, and to the extent that Plaintiff argues that this evidence demonstrates equivalence, he offers nothing by way of analysis to support such an argument.

      Further, it is clear from the decision that the ALJ credited much of Plaintiff's cited evidence when formulating Plaintiff's RFC.[6] First, the ALJ acknowledged that Plaintiff presented with trace peripheral edema at an August 2021 appointment, but the ALJ also explained that Plaintiff "demonstrated regular rate and rhythm of the heart and normal lungs." AR 19 (citing AR 659). Second, the ALJ evaluated Dr. Lim's examination and opinion, noting that the examination "revealed well controlled hypertension, pitting edema of the lower extremities, and evidence of congestive heart failure." AR 21 (citing AR 628-32). Dr. Lim opined that in an eight-hour workday, Plaintiff was limited to standing/walking for two hours, sitting for six hours, lifting/carrying 20 pounds occasionally and 10 pounds frequently, and occasional postural limitations such as occasional climbing. See AR 632. The ALJ found this functional assessment persuasive and incorporated Dr. Lim's opined postural limitations into Plaintiff's RFC (which, because it limits Plaintiff to sedentary work, is more restrictive that Dr. Lim's opinion). See AR 18, 21; 20 C.F.R. § 416.967(a).

      Considering the above, the Court cannot conclude that the ALJ's failure to specifically evaluate Plaintiff's PVD under Listing 4.12 amounted to reversible legal error. See Ford, 950 F.3d at 1148 (citation omitted); see also Kennerson v. Colvin, No. 14-01290, 2015 WL 3930167, at *1-2 (C.D. Cal.

---

[6] The ALJ did not discuss one of Plaintiff's cited records, a treatment record dated November 1, 2019, from CHC Urgent Care. See AR 480. However, while this treatment note listed "legs swelling" as part of Plaintiff's history of present illness, it also reported "no swelling" from a musculoskeletal examination of Plaintiff. See AR 481.

June 25, 2015) ("Plaintiff has not satisfied her burden of showing that the ALJ's alleged error in failing to consider Listing 14.09D affected her substantial rights or resulted in prejudice . . . Plaintiff offers nothing in the way of analysis that purports to compare her condition to that described in Listing 14.09D."). Accordingly, remand is not warranted.

## IV. CONCLUSION

The ALJ's denial of benefits is affirmed and this case is dismissed with prejudice.

Date: October 12, 2023

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge